### 45757. ALL-CO DRAINAGE & BUILDING PRODUCTS, INC. v. UMSTEAD ENTERPRISES, INC.

JORDAN, Presiding Judge. Umstead Enterprises filed a complaint against All-Co Drainage & Building Products seeking to recover damages for goods sold by the defendant to the plaintiff which were allegedly worthless. The jury found for the plaintiff for $6,633, and the trial judge entered judgment in this amount, subject to the requirement that upon payment the plaintiff restore to the defendant all available goods at the place presently stored. The defendant appeals from the order overruling the motion for judgment n.o.v. or, in the alternative, a new trial. *Held:*

The verdict of $6,633 is explained by undisputed evidence of the $7,370 paid for the goods and evidence of an offer of the defendant to repurchase the merchandise at 90% of the price paid.

The plaintiff was attracted to the defendant's products by a newspaper advertisement of November 10, 1968, seeking an individual or firm "to service pre-established accounts with our famous underwater cement" and stating further "100-PCT guarantee. Buy back on inventory at all times." Upon receiving literature and after discussions between representatives of two firms, the plaintiff placed an order on November 25, 1968, for a carload of "All-Crete" quick-setting cement, i.e., 1,600 fifty lb. bags, including pallets and promotional materials, for a total price of $7,370, less 2% cash discount. In a letter dated December 10, 1968, the defendant confirmed this purchase order of November 25, 1968, and the appointment of the plaintiff as "Regional Warehouse Distributor" for seven southeastern states, and further stated that the product cost of demonstrations would be shared equally. In this letter the repurchase offer is stated as follows: "If at the end of 180 days you find the distribution of this product not to your satisfaction we will repurchase the merchandise at original purchase price less 10%." By a reply letter dated December 16, 1968, the plaintiff noted a possible difference in the advertised repurchase offer and the offer as stated in the letter. The writer stated: "It was my opinion that the original purchase order would be returned to the investor if not completely satisfactory. This was the ad that was run in all Southern papers: '100% guarantee buy back on inventory at all times.'" The writer otherwise, however, clearly indicated the intention of the plaintiff at that time to proceed with the transaction. He confirmed in writing the warehouse address of the plaintiff, and included a request for a billing eliminating reference to a down payment of approximately 10% in order to seek a bank loan for the full amount.

Neither party appears to be willing to concede that the 90% repurchase offer was agreed upon as an enforceable agreement, but the above evidence would clearly authorize a jury to determine that the plaintiff, having placed the order in the belief that the

defendant would repurchase at 100% of the purchase price, acquiesced in the statement of the defendant that repurchase would be limited to 90% of the purchase price, and that the writer was merely complaining of what he regarded as a misleading advertisement of the repurchase offer, although by letter dated February 5, 1969, the plaintiff again indicated the view that the defendant was obligated to repurchase at 100% of the purchase price.

The evidence further discloses that the shipment reached the plaintiff during the latter part of December, 1968, and that the plaintiff, having made a down payment of $750 by a check dated November 25, 1968, completed payment of the full invoice price of $7,370 by a check for $6,620, dated January 9, 1969. Thereafter, a representative of the plaintiff, with the assistance of a representative of the defendant, arranged and made demonstrations of "All-Crete" to prospective users. These demonstrations failed to show that "All-Crete" was a quick-setting cement which would set as represented and which would interest prospective buyers, either for use or re- sale. Efforts of the plaintiff to resolve the matter, in terms of repurchase, as suggested in the letter of February 5, 1969, or otherwise, were unsuccessful, as were efforts to obtain instructions concerning disposition of the goods. Approximately 1,000 bags of the cement have been held in storage and are available to the defendant but the plaintiff has disposed of the remainder of the order without authority from the defendant, except that which was used in demonstrations. The evidence fails to disclose the exact amount remaining in storage, but it is obvious that this amount can be readily ascertained.

The UCC clearly contemplates that the method of computing a loss may be controlled by the agreement, in addition to or in substitution of methods provided by statute. Section 2-719 (1) (a) (Ga. L. 1962, pp. 156, 233; *Code Ann.* § 109A-2—719 (1) (a)). It also provides for a determination of a loss to the buyer after acceptance by reason of a breach of the seller in any manner which is reasonable. Section 2-714 (1) (Ga. L. 1962, pp. 156, 230; *Code Ann.* § 109A-2—714)).

Based on a consideration of the pleadings, the evidence, and the

asserted errors, no legal basis exists to support a showing of error in refusing judgment n.o.v. for the defendant. We are aware of no theory of law whereby the evidence would demand a judgment for the defendant. We are of the further opinion that the evidence does support the verdict for the plaintiff, but not for the full amount thereof, and that there was no error requiring reversal of the order overruling the grant of a new trial, if the plaintiff agrees to write off as credit on the judgment the inventory price of all goods included in the order which were disposed of without the consent of the defendant. This casts the costs of appeal on the appellee. See *Crowe v. Harrell,* 122 Ga. App. 7 (6) (176 SE2d 190); *Greene v. Gulf Oil Corp.,* 119 Ga. App. 87 (166 SE2d 626); *Nail v. Hiers,* 116 Ga. App. 522 (157 SE2d 771). Affirmed on condition that within 20 days from the return of the remittitur to the trial court the parties agree upon the amount and invoice value of the goods disposed of after plaintiff terminated its sales arrangement and sought to return the merchandise, and that plaintiff write that amount off the judgment; otherwise the judgment is reversed for the determination of this one issue by another trial.

*Judgment affirmed on condition. Eberhardt and Pannell, JJ., concur.*

ARGUED NOVEMBER 2, 1970—DECIDED JANUARY 8, 1971—
REHEARING DENIED FEBRUARY 3, 1971—CERT. APPLIED FOR.

*Harris, Rolader & Simmons, Robert B. Harris,* for appellant.
*Alston, Miller & Gaines, Ronald L. Reid,* for appellee.